**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

Tina Lindsey,
              Plaintiff,

      vs.

Spartanburg County Sheriff
Charles "Chuck" Wright and,
The Gannett Inc.,
*(d/b/a The Spartanburg Herald-Journal/
GoUpstate)*,
              Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT
(JURY TRIAL DEMANDED)**

     The Plaintiff, Tina Lindsey (hereinafter, "Lindsey"), files this complaint by and through herself as Pro Se, complaining of the Defendants, bringing this civil rights action pursuant to 42 U.S.C § 1983 against Sheriff Chuck Wright (hereinafter, "Wright") and The Gannett Inc., *d/b/a Spartanburg Herald Journal/Go Upstate*, (hereinafter, "SHJ/GU").

## **PARTIES**

1. Tina Lindsey is both a citizen and resident of Greenville County, South Carolina.

2. Upon information and belief, Defendant Sheriff Charles "Chuck" Wright is a citizen and resident of Spartanburg, South Carolina. Charles "Chuck" Wright is the elected Sheriff of Spartanburg County and commands the Spartanburg County Sheriff's Office (hereinafter, "SCSO") in Spartanburg, South Carolina.

3. Upon information and belief, The Gannett Company Inc., d/b/a *Spartanburg Herald-Journal & Go Upstate* (hereinafter, "SHJ/GU"), is a corporation with operations existing

under and by the laws of the State of South Carolina, specifically with a location within Spartanburg, South Carolina.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over the federal claims against the defendants pursuant to 28 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

5. This Court has supplemental jurisdiction over the state claims against the defendants pursuant to 28 U.S.C § 1367 because those claims arise under the same facts as those over which the court has original jurisdiction as described in the preceding paragraph.

6. Based on information and belief, this court has personal jurisdiction over all Defendants as all Defendants reside in this district and the acts and/or omissions complained of occurred within this District.

7. Venue is proper in the District of South Carolina, the Spartanburg Division, pursuant to 28 U.S.C § 1391(b)(1) and (2), as at least one defendant resides in this district and the acts and/or omissions complained of occurred within this district.

## FACTUAL ALLEGATIONS

8. On or about January 31, 2003, false statements about Ms. Lindsey began circulating on the Spartanburg Herald Journal's online platform, *Go Upstate*.

9. In a co-joined effort, officer(s) at the Spartanburg County Sheriff's Office and reporter(s) at the Spartanburg Herald Journal published and spread false, defamatory, and/or libelous information about Lindsey.

10. Spartanburg County officer(s) made and reported false and defamatory statements to the Spartanburg Herald Journal that portray Lindsey murdering her boyfriend.

11. The Spartanburg Herald Journal published those false and defamatory statements on their online platform, *Go Upstate*.

12. The Spartanburg Herald Journal included Lindsey's picture with the publication and added the word "killed" in the headline.

13. Here are the events leading up to the incident at Lindsey's home on January 31, 2003.

14. Lindsey met someone who began controlling her life.

15. He forced her to leave with him and held her against her will.

16. He took over Lindsey's car.

17. He even locked her in the trunk of her car.

18. He beat her with a gun while her small child watched.

19. He terrorized Lindsey and her child daily.

20. He threatened to harm her and her family if she left him.

21. He used the child as an excuse for his actions, but he abused the child as well.

22. When Lindsey got the chance to leave with her child, she ran, and he pursued her.

23. After she was safe away, she bought another vehicle to avoid being recognized by him.

24. She moved from place to place, seeking refuge from him.

25. Lindsey defended her life after he forcefully entered her home.

26. Lindsey was taken into custody and transported by an officer to the SCSO.

27. She was held in the interrogation room most of the day.

28. While still in custody later that afternoon, Lindsey began writing her statement.

29. Lindsey struggled to write as she was experiencing severe symptoms of trauma.

30. An officer offered to finish writing her statement for her.

31. Lindsey relied on that officer to finish writing her statement verbatim.

32. That officer purposely falsified Ms. Lindsey's statement.

33. He left out crucial details regarding the aggressor's injury.

34. He added other details to hide his deceitful acts and/or omissions.

35. Spartanburg County officer(s) reported unfounded information to a reporter at the Spartanburg Herald Journal that portrays Lindsey committing murder.

36. The officer(s) acted with willful, wanton, and reckless disregard for the truth.

37. Lindsey knew the article existed but never read it; after all, she didn't need to; she was there. She avoided any reminders of that horrifying time in her past.

38. The photo alone was enough to retraumatize her, and that was her stopping point when she attempted to read it; she experienced avoidance for many years afterward.

39. In the spring of 2021, Lindsey became aware of those false statements within that libelous publication on the Spartanburg Herald Journal's online platform, *Go Upstate*.

40. When Lindsey became aware of that libelous publication, she tried to have it removed by calling, sending emails, and physically visiting the offices of both defendants.

41. She couldn't find anyone willing to help her.

42. Lindsey reviewed the documents a Spartanburg County officer handed her upon her release from the SCSO in 2003.

43. The documents she received from him did not include the initial investigation report or anything showing the facts of the investigation.

44. Lindsey visited records at the SCSO and asked for the initial investigation report; Lindsey explained to the clerk that she did not receive it upon her release in 2003.

45. The clerk stated that it was a homicide and that only her attorney could get that report.

46. Lindsey tried to obtain legal counsel, but even that proved impossible.

47. In July 2021, Lindsey finally received a document from an outside source showing the falsity of those libelous statements within that publication.

48. Lindsey has continuously tried to obtain legal counsel regarding this matter, but that libelous publication has been an ongoing deterrent in all her efforts.

49. It's such a deterrent that if she had learned of those damaging statements in 2003, it wouldn't have made much difference in her ability to obtain legal representation.

50. Those false and damaging statements portraying Lindsey murdering her boyfriend have not only lowered her in the estimation of the community but have also deterred third persons from associating and dealing with her.

51. Those libelous statements have limited her speech and prevented her from getting the legal help necessary to redress her grievances, especially when the statute of limitations is a limited window in which one can act.

52. The wrongful act(s) and/or omission(s) by the defendants and the libelous publication that resulted are both the proximate and direct cause of Lindsey's injuries, including but not limited to financial, character, and reputational damages.

.

## **FIRST CAUSE OF ACTION**
**Against Sheriff Chuck Wright and the Gannett/Spartanburg Herald Journal**
**(First Amendment Right Violation)**

53. Ms. Lindsey repeats the allegations of paragraphs 1- 52 of her complaint as if fully repeated here verbatim.

54. An officer(s) unlawfully provided false, misleading, deceitful, and incorrect information on Lindsey's statement without her knowledge.

55. That falsified statement was then added to the investigation report pertaining to Lindsey's case.

56. Officers reported false and defamatory information about Lindsey to the Spartanburg Herald Journal.

57. Those unfounded statements reported by officers portray Lindsey murdering her boyfriend.

58. The publication headline indicates that the Police provided the details for that publication.

59. The Spartanburg Herald Journal included Lindsey's picture and added the word "killed" in the headline.

60. Lindsey became aware of those libelous statements in early 2021.

61. She has contacted both defendants many times about that publication, but both defendants have ignored her.

62. That publication has lowered Lindsey in the estimation of the community and deterred third parties from associating and dealing with her.

63. Those libelous statements have limited her speech and prevented her from obtaining legal representation to redress her grievances, especially regarding this matter.

64. By their unlawful acts and/or omissions, the defendant(s) have violated Ms. Lindsey's First Amendment Right.

65. Ms. Lindsey has suffered significantly, including but not limited to financial, character, and reputational damage, as the publication contains false statements portraying Lindsey committing the immoral act of murdering her boyfriend.

## SECOND CAUSE OF ACTION
### Against Sheriff Chuck Wright
### (Negligence)

66. Lindsey repeats the allegations of paragraphs 1-52 of her complaint as if fully repeated here verbatim.

67. Ms. Lindsey was taken into custody and transported to the SCSO, where she was held in the interrogation room for most of the day; this act established a special relationship.

68. While Lindsey was in custody at the SCSO, the Defendant(s) were legally obligated to safeguard her from harm and all other foreseeable risks; this qualifies as a legal duty.

69. Ms. Lindsey relied on and trusted the officer(s) to act with integrity while performing their duties.

70. Officer Gary breached a legal duty owed to Ms. Lindsey when he unlawfully falsified her statement by leaving out crucial details regarding the aggressor's injury and adding other details to cover up his unlawful acts and/or omission(s).

71. That legal duty was further breached when Spartanburg County officer(s) reported false and defamatory information about Lindsey concerning the aggressor's injury to the Spartanburg Herald-Journal that wrongfully portrays her murdering her boyfriend.

72. The officer(s) had a specific duty to guard against and not cause Lindsey harm while she was in their custody; the harm those officer(s) caused her was foreseeable.

73. The defendant(s)' breach directly caused Lindsey's injuries, including but not limited to Ms. Lindsey's character and reputational damage.

74. But for" the defendant(s) action(s) and/or inaction(s), Ms. Lindsey's damages would not have occurred.

75. To complete the six-part test for negligence, Lindsey was protected by her Second Amendment Right to keep and bear arms, especially in her own defense.

76. Lindsey identified as human before the fact, she was human before the aggressor forcefully entered her home, a home where he did not live. She remains human.

77. After being academy and department trained, officer(s) knew or had reason to know the likelihood of harm to a member of a protected class if he/she/they failed to do his/her/their duty.

78. The officer(s) did not appear to be supervised in his/her/their work, so he/she/they were given sufficient authority to act under the circumstances when he/she/they falsified Lindsey's statement and reported defamatory information to a third party, or the SHJ/GU.

79. The officer(s) also acted under the color of law when he/she/they violated Ms. Lindsey's First Amendment Right.

80. Due to the acts and/or omissions by the defendant(s) violating Lindsey's First Amendment Right by reporting false and defamatory information to the SHJ/GU, Ms. Lindsey has suffered for over twenty years, including but not limited to financial, character, and reputational damage.

## THIRD CAUSE OF ACTION
### Against Sheriff Chuck Wright
### (Defamation Per Se)

81. Lindsey repeats the allegations of paragraphs 1-52 of her complaint as if fully repeated here verbatim.

82. Officer(s) at the Spartanburg County Sheriff's Office made and communicated false and defamatory statements regarding Lindsey's case to a reporter(s) at the Spartanburg Herald Journal.

83. The Spartanburg Herald-Journal published those defamatory statements in their newspaper on January 31, 2003.

84. The injuries reported and the details surrounding the injury were completely falsified to a degree that portrays murder.

85. Those unfounded and outrageous details reported by officers portray Lindsey committing the immoral act of murdering her boyfriend.

86. The publication headline indicates that the Police provided the details for that article.

87. That libelous publication has caused Ms. Lindsey over twenty years of damage, including but not limited to financial, character, and reputational damages.

## FOURTH CAUSE OF ACTION
### Against The Spartanburg Herald-Journal
### (Defamation Per Se- Libel)

88. Lindsey repeats the allegations of paragraphs 1-52 of her complaint as if fully repeated here verbatim.

89. The Spartanburg Herald Journal published false information about Ms. Lindsey in their newspaper and on their online platform, Go Upstate.

90. The publication contains false statements portraying Ms. Lindsey as murdering her boyfriend.

91. The Spartanburg Herald Journal included a picture of Lindsey with the publication and added the word "killed" in the headline.

92. Lindsey emailed several SHJ/ GU employees and informed them that statements within that publication were untrue, unfounded, and damaging to her character and reputation.

93. The Spartanburg Herald Journal has ignored all of Lindsey's communications to them about that publication.

94. The Gannett, or SHJ/GU, has profited greatly from that libelous publication for over twenty years at Ms. Lindsey's expense.

95. The Gannett or SHJ/GU profited every time Lindsey applied for a job, used her debit or credit card, anywhere she presented her identification, or gave someone her name while ordering or introducing herself; they profited every time that article was randomly read.

96. Ms. Lindsey has experienced financial, character, and reputational damage due to that libelous publication on the Spartanburg Herald Journal's website, *Go Upstate*.


## **JURY DEMAND**


**WHEREFORE,** Plaintiff demands a trial by Jury and respectfully requests that this court award the following damages joint and several against the defendants as provided by the South Carolina Law and the United States Constitution, including but not limited to the following,

a. Compensatory, actual, and special damage.

b. Removing and eradicating that false and libelous publication and photo from the SHJ/GU website with assurance that it won't be sold or found on any other website.

c. Costs of this action and attorney and/or non-attorney fees to the Plaintiff for her civil rights causes of action under 42 U.S.C. § 1988.

d. Loss of earnings or earning capacity;

e. Loss of opportunities;

f. Punitive damages;

g. Such other and further relief as this court deems appropriate.

Respectfully submitted,

March 31, 2025
~~April 1, 2025;~~
Greenville, South Carolina

*Tina Lindsey*

Tina R. Lindsey – Pro Se
130 Stringer Road
Landrum, South Carolina 29356
lindseyt9973@gmail.com